IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLIVET BAPTIST CHURCH,<br>      Plaintiff,<br><br>v.<br><br>CHURCH MUTUAL INSURANCE<br>COMPANY,<br>      Defendant. | )<br>)<br>)<br>)    Case No. 13-cv-01625<br>)<br>)<br>)<br>) |

## ANSWER AND AFFIRMATIVE DEFENSES
## TO PLAINTIFF'S SECOND AMENDED COMPLAINT

NOW COMES Defendant, CHURCH MUTUAL INSURANCE COMPANY ("Church Mutual"), by and through its attorneys, Johnson & Bell, Ltd. (Scott W. Hoyne), and for its Answer to the Second Amended Complaint of Plaintiff Olivet Baptist Church ("Olivet") states as follows:

### NATURE OF THE CASE

1. Olivet Baptist is the owner of a property which is located at 3101 S. King Drive, in Chicago, IL, (hereinafter the "Property") which suffered damage due to a covered event under the insurance policy supplied by Defendant.

**ANSWER:** Defendant admits that Olivet is the owner of the property located at 3101 S. King Drive, in Chicago, Illinois (hereinafter the "Property"). Defendant denies the remaining allegations of paragraph 1.

2. Prior to the occurrence in question, Olivet Baptist purchased an insurance policy (the "Policy") from Defendant to cover the Property for a loss due to certain enumerated conditions, events and specified perils. However, upon the occurrence of a covered event in the present matter, in which the Property suffered a severe loss, Defendant has refused to provide coverage and proper payment of insurance proceeds to Olivet Baptist.

**ANSWER:** Defendant admits that Olivet purchased an insurance policy (the "Policy") from defendant defective 12:01 a.m. Central Standard time, February 28, 2011. Church Mutual further admits that said Policy provided certain "basic form" coverage for windstorm or hail as is more specifically defined within the body of the subject Policy. Defendant admits that it has refused to pay the claims submitted to Church Mutual by Olivet. Defendant denies all remaining allegations of paragraph 2.

## PARTIES

3.  Olivet Baptist is a church entity and is located in Cook County, Illinois. Olivet Baptist is also a corporation, duly incorporated within the state of Illinois, and with its principal place of business in the state of Illinois.

**ANSWER:** Church Mutual admits the allegations of paragraph 3.

4. Defendant, Church Mutual Insurance Company, is a corporation engaged in the business of adjusting insurance claims with a principal place of business in Wisconsin. Defendant issued policy number 0109837-02-317133, which applies to the Property, and is at issue in the present case through Olivet Baptist's underlying insurance claim. Defendant has previously answered, is represented by counsel, and is properly before this Honorable Court for all purposes.

**ANSWER:** Church Mutual admits that it is a mutual insurance company which issues policies of insurance to religious organizations and other non-profit entities. Defendant admits that it issued its insurance policy No. 0109837-02-317133 to Olivet Baptist Church. Church Mutual further admits that its principal place of business is located in Merrill, Wisconsin and that policy No. 0109837-02-317133 is at issue in this case. Defendant admits that it has previously answered Count I of Plaintiff's First Amended Complaint and that Defendant is properly before this Honorable Court. Defendant denies all remaining allegations of paragraph 4.

## JURISDICTION AND VENUE

5. This Honorable Court has jurisdiction over all parties of this lawsuit under 28 U.S.C. § 1332(a)(1) because Defendant and Olivet Baptist are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of attorneys' fees, interest and costs.

**ANSWER:** Defendant admits the allegations of paragraph 5.

6. Defendant is a corporation organized under the laws of Wisconsin and has its principal place of business in Wisconsin. As such, for diversity purposes, Defendant is a citizen of the State of Wisconsin.

**ANSWER:** Defendant admits the allegations of paragraph 6.

7. Venue is proper for this action, since Olivet Baptist is located in Cook County, Illinois.

**ANSWER:** Defendant admits the allegations of paragraph 7.

## FACTUAL BACKGROUND

8. Defendant is, and during all relevant times has been, in the business of writing and issuing policies of property insurance and is authorized to transact business in many states.

**ANSWER:** Defendant admits the allegations of paragraph 8.

9. On March 1, 2011, and thereafter, the Property suffered damage due to wind, and/or other weather related conditions, as well as other covered events that took place within Cook County, IL.

**ANSWER:** Defendant denies the allegations of paragraph of 9.

10. In the aftermath, Olivet Baptist relied on Defendant to help begin the rebuilding and repair process. By and through the Policy, Olivet Baptist was objectively insured for the subject losses in this matter.

**ANSWER:** Defendant denies the allegations of paragraph 10.

11. During this time, Olivet Baptist had made complete payment of insurance premiums in a timely fashion. Moreover, the Policy covered Olivet Baptist during the time period in question.

**ANSWER:** Defendant admits that it has received premium payments from Olivet. Defendant denies all remaining allegations of paragraph 11.

12. On April 18, 2011, Olivet Baptist followed the proper procedure to file a claim with Defendant, specifying March 1, 2011, as its date of loss, based upon the covered event that occurred on this date, as well as the losses that manifested themselves accordingly.

**ANSWER:** Church Mutual admits that its first notice of the alleged covered event of March 1, 2011 was received by Church Mutual on April 18, 2011. Defendant further admits that Olivet claims that the losses it sustained as a result of the alleged covered event on March 1, 2011 later allegedly manifested themselves. Defendant denies all remaining allegations of paragraphs 12.

13. On May 12, 2011, Defendant acknowledge Olivet Baptist's claim. Six days later, on May 18, 2011, Olivet Baptist sent additional correspondence to Defendant stating it had retained Renaissance Roofing to serve as its roofer of record on this matter. At this point, nothing had been done by Defendant to properly inspect, evaluate, or pay the loss in this matter.

**ANSWER:** Church Mutual admits that it provided written acknowledgment to Olivet of Olivet's claim by letter dated May 12, 2011. Church Mutual acknowledged said claim verbally prior to that date. Church Mutual further admits that it did receive a letter dated May 18, 2011 advising Church Mutual that Olivet had retained Renaissance Roofing to serve as its roofer of record. Defendant denies all remaining allegations of paragraph 13.

14. Over the following weeks and months, although Defendant did eventually send representatives to the Property to evaluate the same, no coverage was extended, nor any payments made. Moreover, during this time, including the summer months of 2011 and into the

fall 2011 season, additional wind events continued to occur, as to which Defendant was informed during its inspections, yet still Defendant did nothing to remedy the continually worsening situation at the Property.

**ANSWER:** Defendant admits that it has denied plaintiff's claim. Defendant denies all remaining allegations of paragraph 14.

15. As with the above, between June 1, 2011 and June 21, 2011, there were numerous weather events, including tornados, excessive wind and hail, which affected the Property, and as to which Olivet Baptist informed Defendant appropriately. Additionally, on dates up to and including September 3, 2011, additional hail storms and wind events took place in Cook County, IL as to which Olivet Baptist also gave notice to Defendant of its being affected by the same. Yet, once again, Defendant did nothing to remedy the situation.

**ANSWER:** Defendant denies the allegations of paragraph 15.

16. On October 4, 2011 a Reservation of Rights letter was sent by Defendant to Olivet Baptist which provided every indication that there would be no coverage offered, despite numerous covered events occurring within the policy period. Nevertheless, Olivet Baptist continued to allow Defendant to investigate and perform all necessary inspections on the Property including allowing York Specialized Loss Adjusting (Defendant's hired adjuster) and Wiss, Janney, Elstner Associates, Inc. (Defendant's hired engineer) to perform all required activities in order to fully cooperate with its insurance carrier.

**ANSWER:** Defendant admits that it sent a reservation of rights letter to Olivet dated October 4, 2011. Defendant further admits that Olivet allowed York Specialized Loss Adjusting and Wiss, Janney, Elstner Associates, Inc. to inspect the subject church. Defendant denies all remaining allegations of paragraph 16.

17. Despite all of Olivet Baptist's good faith efforts, on February 14, 2012, Defendant sent a denial letter to Olivet Baptist, completely denying coverage for the loss despite all evidence to the contrary, and ailing to address any and all additional damages at the Property reported to Defendant by Olivet Baptist..

**ANSWER:** Defendant admits that it sent a letter to Olivet dated February 14, 2012 denying Olivet's claim. Defendant denies all remaining allegations of paragraph 17.

18. In the upcoming months, including but not limited to May of 2012 through August of 2012, additional windstorms, torrential rains and hail storms impacted Cook County, IL., including the Property. However, because Defendant refused to pay for the damages associated with the covered event from the outset, continuing damage has accumulated and worsened the situation exponentially. In addition, Defendant has now cast blame upon the Olivet Baptist's efforts in mitigating this damage, including admonishing Olivet Baptist for using temporary repairs and add tarp covering to the Properties' roof, because securing the same with nails allegedly caused additional damage to the roof structure.

**ANSWER:** Defendant denies the allegations of paragraph 18.

19. Despite Defendant's improprieties, Olivet Baptist continued to provide information regarding the losses and the related claim to Defendant. Further, Olivet Baptist made continuing inquiries regarding the status of the losses and payments. Regardless, Defendant failed and refused to response to the inquiries, and failed to properly adjust the claim and the losses. As a result, Olivet Baptist has not received proper payment for its claim.

**ANSWER:** Defendant denies the allegations of paragraph 19.

20. Defendant has failed to explain the reasons for failing to offer adequate compensation for the damage to the Property. Defendant has further failed to offer Olivet Baptist adequate compensation, without sufficient explanation as to why full payment is not

being made. Defendant has, however communicated that no future settlements or payments will be forthcoming to pay the severe losses covered under the Policy.

**ANSWER:** Defendant denies the allegations of paragraph 20.

21. Defendant has further failed to meet its obligations under all governing statutes regarding timely acknowledgment of Olivet Baptist's claim, beginning an investigation of Olivet Baptist's claim, and requesting all information reasonably necessary to investigate Olivet Baptist's claims within the time period mandated by statute.

**ANSWER:** Defendant denies the allegations of paragraph 21.

22. As a result of the above issues, Olivet Baptist did not receive the coverage for which it had originally contracted with Defendant. Unfortunately, Olivet Baptist has therefore been forced to file this suit in order to recover damages arising from the above conduct, as well as from the unfair refusal to pay insurance benefits.

**ANSWER:** Defendant denies the allegations of paragraph 22.

23. Defendants' acts, omissions, and/or breaches did great damage to Olivet Baptist, and were a proximate cause of Olivet Baptist's damages.

**ANSWER:** Defendant denies the allegations of paragraph 23.

## COUNT I
## BREACH OF CONTRACT

24. Olivet Baptist hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

**ANSWER:** Church Mutual incorporates by reference all of its responses to Plaintiff's paragraphs 1 through 23 as its response to Paragraph 24.

25. According to the policy that Olivet Baptist purchased, Defendant had the absolute duty to investigate Olivet Baptist's damages, and to pay Olivet Baptist's policy benefits for the

claim made due to the extensive damages caused by the subject storm related conditions, and other covered events.

**ANSWER:** Defendant admits that it had a right to investigate the claims made by Olivet. Defendant denies all remaining allegations of paragraph 25.

26. Defendant also had and owed a legal duty to Olivet Baptist to properly adjust the structural and property damage and other insurance losses associated with the Olivet Baptist's Property. Defendants' breached its duties and the Policy in a number of ways, including but not limited to the following:

    a. Defendant was to exercise due care in appropriately and completely adjusting Olivet Baptist's property loss;

    b. Defendant had a duty to completely and completely handle and pay all damages associated with Olivet Baptist's property loss; and

    c. Defendant breached the same by failing to properly carry out and complete all adjusting activities associated with the property.

**ANSWER:** Defendant denies the allegations of paragraph 26 and all subparts thereof.

27. Despite objective evidence of Olivet Baptist's damages, Defendant breached its contractual obligations under the subject insurance policy by failing to properly inspect and assess Olivet Baptist's claim and pay Olivet Baptist insurance proceeds relating to the cost to properly repair Olivet Baptist's property, as well as for related losses. As a result of this breach, Olivet Baptist has suffered actual and consequential damages, which are ongoing to this day.

**ANSWER:** Defendant denies the allegations of paragraph 27.

WHEREFORE, Defendant Church Mutual Insurance Company denies that Plaintiff is entitled to the damages sought in Count I of Plaintiff's Second Amended Complaint.

## COUNT II
## VIOLATIONS OF §155 ILLINOIS INSURANCE CODE

28. Olivet Baptist hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

**ANSWER:** Church Mutual incorporates by reference all of its responses to Plaintiff's paragraphs 1 through 27 as its response to Paragraph 28.

29. Under Illinois law, Olivet Baptist has a cause of action against its insurer under §155 of the Illinois Insurance Code.

**ANSWER:** Defendant denies the allegations of paragraph 29.

30. Through the same, Olivet Baptist may recover additional and penalty-based damages if its insurer disputes an amount of loss payable on a claim, delays settling a claim, or refuses to provide coverage, and the insurer's action or delay was unreasonable or vexatious.

**ANSWER:** Defendant denies the allegations of paragraph 30.

31. In the present matter, Defendant has systematically and unjustifiably refused to provide coverage, despite the same being undebatable. Moreover, based upon said denial of coverage, there has been no settlement of Olivet Baptist's insurance claim, which has now be significantly delayed, and the Property has suffered extreme and continuing damage due to the same.

**ANSWER:** Defendant denies the allegations of paragraph 31.

32. Defendants actions and delay have been completely unreasonable and vexatious in the present matter. Based upon the totality of the circumstances surrounding Olivet Baptist's claim, and due to the action (and inaction) by Defendant from the date said claim was made until the present, Olivet Baptist has been forced to file suit in this matter.

**ANSWER:** Defendant denies the allegations of paragraph 32.

WHEREFORE, Defendant Church Mutual Insurance Company denies that Plaintiff is entitled to the damages sought in Count I of Plaintiff's Second Amended Complaint.

## DAMAGES

33. Defendant's acts have been the producing and/or proximate cause of damage to Olivet Baptist that far exceeds the minimum jurisdictional limits of this court.

**ANSWER:** Defendant denies the allegations of paragraph 33.

## ATTORNEYS' FEES

34. Defendant's acts have been the producing and/or proximate cause of damage to Olivet Baptist that far exceeds the minimum jurisdictional limits of this court.

**ANSWER:** Defendant denies the allegations of paragraph 34.

## JURY DEMAND

35. Olivet Baptist demands a jury trial.

**ANSWER:** Defendant admits that Olivet has demanded a trial by jury. Church Mutual has also demanded trial by jury.

## PRAYER

36. Olivet Baptist prays that Judgment be entered against Defendant, and that Olivet Baptist be awarded all of the following:

    a. Actual damages at the Property;
    b. Consequential damages suffered by Olivet Baptist;
    c. Pre-judgment interest;
    d. Post-judgment interest;
    e. Attorney fees
    f. Costs of Court;
    g. All penalty related damages allowed under §155 of Illinois Code; and
    h. Any and all other damages, whether penalty-based or otherwise, available under Illinois law due to the actions and inactions of the Defendant as set forth above.

**ANSWER:** Defendant denies that Olivet is entitled to the damages sought or any damages whatsoever.

WHEREFORE, Defendant demands that Plaintiff's Second Amended Complaint be dismissed, with Defendant's costs awarded.

## AFFIRMATIVE DEFENSES

NOW COMES Defendant, CHURCH MUTUAL INSURANCE COMPANY ("Church Mutual"), by and through its attorneys, Johnson & Bell, Ltd. (Scott W. Hoyne), and for its Affirmative Defenses to Plaintiff's Second Amended Complaint states as follows:

### FIRST AFFIRMATIVE DEFENSE

1. On March 1, 2011, the date claimed by Plaintiff to be the date of the wind storm which allegedly caused Plaintiff's loss, the policy of insurance issued by Church Mutual to Olivet contained an Endorsement A 125 (04-06) which states, in pertinent part, as follows:

> B. EXCLUSIONS
>
> 2. We will not pay for loss or damage caused by or resulting from . . .
>
> f. Neglect of an Insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

2. Subsequent to the alleged March 1, 2011 loss claimed by Plaintiff the Plaintiff retained the service of Renaissance Roofing, Inc. ("Renaissance") and instructed Renaissance to install titanium paper over the roof of the sanctuary allegedly damaged by the wind storm which Plaintiff claims occurred on or about March 1, 2011. The fasteners used to affix the titanium paper to the roof punctured hundreds of previously undamaged shingles on the roof, thus ending the use of the life of the roof.

3. As a result of the work performed by Renaissance at the request of Plaintiff the Plaintiff breached the Church Mutual policy of insurance by neglecting to use reasonable means to preserve and protect the insured property from future damage at and after the time of the

alleged loss. The damage to the roof caused by Renaissance Roofing falls within the exclusion cited above and found within Endorsement A 125 (04-06).

## SECOND AFFIRMATIVE DEFENSE

1. At the time of Plaintiff's alleged March 1, 2011 loss, the policy of insurance issued by Church Mutual to Plaintiff contained an insuring provision, Endorsement A125 (04-06), which states, in pertinent part, as follows:

>   A. COVERED CAUSES OF LOSS.
>
>   When Basic is shown on the Declarations Page, Covered Causes of Loss mean the following:
>
>   \* \* \*
>
>   4. Wind storm or Hail, but not including:
>
>   \* \* \*
>
>   c. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.

2. Plaintiff has claimed extensive damage to the interior of its building and, as well, to personal property located within said building. The water damage to the interior of Plaintiff's building and to the property found within said building was not caused by rain or snow which entered the building through damaged portions of the building sustained by wind or hail.

## THIRD AFFIRMATIVE DEFENSE

1. The policy of insurance issued by Church Mutual to Plaintiff had an inception date of 12:01 a.m., February 28, 2011. The wind storm which allegedly caused Plaintiff's loss occurred on or about March 1, 2011.

2. At the time of the inception of the Church Mutual policy, and at the time of the wind storm which Plaintiff alleges caused its loss, the roof over the church was already in a damaged and deteriorated condition such that the damage to said roof was a "known loss" as defined under Illinois law.

### FOURTH AFFIRMATIVE DEFENSE

1. At the time of Plaintiff's alleged March 1, 2011 loss, the policy of insurance issued by Church Mutual to Plaintiff contained certain Property Conditions in Endorsement A100 (01-01) to the policy which states, in pertinent part, as follows:

> 3. Duties in the Event of Loss or Damage.
>
>> a. You must see that the following are done in the event of loss or damage to Covered Property.
>>
>> \* \* \*
>>
>> (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
>>
>> (3) As soon as possible, give us a description of how, when, and where the loss or damage occurred.
>>
>> (4) Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

2. Although Plaintiff's alleged loss took place on or about March 1, 2011, Plaintiff did not provide Church Mutual with notice of the alleged loss until April 18, 2011, long after the alleged loss took place. As a result of Plaintiff's failure to provide Church Mutual with prompt notice of loss as required by the subject policy Church Mutual was prejudiced in its ability to

properly investigate the date of the alleged loss and the cause of the alleged loss. Moreover, since Plaintiff has admitted, through its pastor, that the church roof was damaged before the February 28, 2011 inception date of the policy Church Mutual was unable to determine what damage occurred on March 1, 2011, the day after the policy inception and what damage occurred prior to 12:01 a.m. on February 28, 2011, the date of inception.

### FIFTH AFFIRMATIVE DEFENSE

1. At all relevant times after the alleged loss and during the claim investigation there existed a bona fide, good faith dispute as to:

   a) Whether Plaintiff did in fact suffer a loss,

   b) Whether the alleged loss was covered under the terms and conditions of the policy,

   c) Whether the insured complied with all conditions precedent to coverage,

   d) The nature and extent of damages arising from the alleged loss.

2. In light of the foregoing bona fide good faith coverage dispute, Plaintiffs are not entitled to recover damages, including but not limited to extra-contractual damages under Section 155 of the Insurance Code.

Respectfully submitted,

JOHNSON & BELL, LTD.

/s/Scott W. Hoyne
Attorney for Church Mutual Insurance Company
Johnson & Bell, Ltd.
33 West Monroe Street; Suite 2700
Chicago, Illinois 60603
p. 312-372-0770
f. 312-372-9818
hoynes@jbltd.com
*#3390469*