UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| OLIVET BAPTIST CHURCH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | 13 C 1625 |
| v. | ) | |
| | ) | Judge George M. Marovich |
| CHURCH MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Olivet Baptist Church ("Olivet") filed suit against Church Mutual Insurance Company ("Church Mutual"), alleging, among other things, breach of an insurance agreement.[1] After several discovery disputes, Magistrate Judge Finnegan issued a Report and Recommendation in which she recommended that plaintiff Olivet be sanctioned. Olivet timely filed objections. For the reasons set forth below, the Court adopts the Magistrate's Report and Recommendation to the extent it is consistent with this opinion.

**I.     Background**

Discovery in this case was originally scheduled to end on January 2, 2014 but was extended several times. At last count, discovery was to close by September 30, 2014, pursuant to Magistrate Judge Finnegan's July 22, 2014 order.

---

[1] The Court has diversity jurisdiction over this case, because plaintiff has alleged that it is an Illinois corporation with its principal place of business in Illinois. (Plf's Second Amended Complt. ¶ 3). Defendant is a Wisconsin corporation with its principal place of business in Wisconsin. (Def. Answer to Second Amended Complaint ¶ 6). The amount in controversy is greater than $75,000.00.

Plaintiff Olivet, a church, purchased from Church Mutual an insurance policy that went into effect on February 28, 2011. Prior to that, Olivet had been without insurance for some period of time. In its second-amended complaint, Olivet alleged that "[o]n March 1, 2011, and thereafter, the Property suffered damage due to wind, and/or other weather related conditions, as well as other covered events that took place within Cook County, IL." (Plf. Second Amended Complaint at ¶ 9). Naturally, discovery in this case covered such subjects as the dates and types of weather events, the extent of the damage and causation. Defendant believes that the damage to the church predated March 1, 2011.

The parties and their attorneys have had a number of disputes with respect to discovery in this case. Church Mutual filed its first motion to compel in October 2013. That motion was entered and continued a number of times, because the parties reported to Magistrate Judge Keys (who was, at the time, the Magistrate Judge assigned to the case) that they were attempting to work out their disputes.

Ultimately, the first motion was mooted when Church Mutual filed, on February 24, 2014, its second motion to compel. The primary focus of the second motion to compel was plaintiff's failure to produce documents that plaintiff's witnesses (Deacon Sawyer, Deacon Romeo and Deacon King) had mentioned during their depositions. Before those depositions, defendant had requested the production of documents reflecting the physical condition of the church prior to March 1, 2011. During the depositions, the deacons testified that they had possessed: (a) records of repairs to the church and its roof before March 1, 2011; (b) pictures of the church before March 1, 2011; and (c) engineering reports from an entity called Perry & Associates. The deacons also testified that they had given those documents to plaintiff's

counsel. Because plaintiff's counsel had not produced the documents in discovery, defendant filed a motion to compel. Defendant also sought the minutes from the meetings of the Deacons' Board and the Board of Directors.

On February 28, 2014, Magistrate Judge Keys "granted in its entirety" Church Mutual's second motion to compel. Magistrate Judge Keys stated in his order:

> The Court has reviewed the transcript of the deposition of two of the deponents. It is clear that documents described in the discovery request are in possession of the church. *These witnesses have represented that they have forwarded these documents to their counsel.* The Court notes that local counsel who has appeared before this court has indicated that he has turned over all of his documents to the defendants. To the extent that out of town counsel has documents in his possession, they are to be turned over by 3/21/14. These documents appear to be very important to the issues in this case. It is imperative that these documents be produced to the defendant forthwith.

(Docket entry 40) (emphasis added). Magistrate Judge Keys went on to say that defendant would be allowed to redepose the relevant witnesses if it needed to. He also extended the discovery deadline to May 31, 2014.

By April 16, 2014, Church Mutual filed its third motion to compel. The primary focus of the third motion to compel was the meeting minutes. Plaintiff had produced minutes of meetings held through December 6, 2006. Defendant found it surprising that plaintiff did not produce minutes for more-recent meetings. At the April 25, 2014 hearing on the motion, the parties agreed to visit the church and to confer in an attempt to resolve their disputes. Magistrate Judge Keys entered and continued the third motion to compel and extended the discovery cut-off date to July 31, 2014.

Soon thereafter, Magistrate Judge Keys retired, and the case was reassigned to Magistrate Judge Finnegan. Magistrate Judge Finnegan set for June 27, 2014 a status hearing, at which

plaintiff's counsel failed to appear. A month later, defendant requested a discovery extension, and Magistrate Judge Finnegan extended the discovery cut-off date to September 30, 2014.

On July 23, 2014, defendant filed its fourth motion to compel. With the fourth motion to compel, defendant sought proper answers to several interrogatories it had propounded in July 2013. Specifically, in Interrogatory No. 4, defendant had asked plaintiff, "For each separate occurrence for which plaintiff is making claim against Church Mutual please state: (a) the precise date and time of the occurrence; (b) the nature of the occurrence (examples: hail, windstorm, tornado, torrential rains); . . ." Plaintiff's original answer to this interrogatory was: "Plaintiff objects as this Interrogatory is overly broad. Subject to the foregoing objection and without waiving the same, this relates to an ongoing problem from March 1, 2011 until the present. It was a result from storm-related and weather-related events, followed by repeating [sic] torrential rain events, and the condition of the property worsened after each occurrence." In other words, plaintiff did not provide a responsive answer. Plaintiff later amended the response to state: "(a) March 1, 2011; (b) It was a result of storm and weather-related events followed by repeating [sic] torrential rain events, and the condition of the property worsened after each occurrence . . ."

Defendant's interrogatories had also requested information on damages. In Interrogatory No. 5, defendant had asked plaintiff to "[d]escribe and itemize by date of occurrence, nature of occurrence (example: hail, windstorm, tornados, torrential rains) and cost of repair the damage sustained by you as a result of each of the occurrences described in Plaintiff's Second Amended Complaint." Plaintiff responded to Interrogatory No. 5 by stating, "All such information was provided Church Mutual on an ongoing basis. Plaintiff relied on our insurance company, Church

Mutual to document each report and investigate each of these incidents. Moreover, Plaintiff had full expectation that Church Mutual would honor claims." Once again, the answer was not responsive to the interrogatory. Plaintiff later amended the response to add, "[Plaintiff] notified [defendant] on April 18, 2011 of the claims underlying the present matter. In addition, on October 15, 2011, despite delays in [defendant's] sending an adjuster to view the loss site, Mr. John Couture, of York Specialized Loss Adjusting met with Deacon Romeo at the loss site." This, too, was not responsive. Separately, plaintiff had supplied a damages report prepared by the Stephenson Group. The report was 700 pages long and itemized costs of $4,196,129.41 to repair the church.

>On August 12, 2014, Magistrate Judge Finnegan entered the following order:
>
>Defendant's fourth motion to compel plaintiff to provide complete responses to written discovery is granted in part and denied in part per the rulings stated on the record. Plaintiff shall provide supplemental answers that provide the date for each weather event, a description of each such weather event (e.g., windstorm, hail storm, tornado), and a description of the specific damages to the church resulting from each weather event and cost of repair. *To the extent that Plaintiff is unable to provide this information, it must so state in the supplemental answers and will be bound by the answers at trial.*

(Docket entry 58) (emphasis added). Judge Finnegan deferred ruling on defendant's request for sanctions.

On August 26, 2014, plaintiff served amended responses. In answer to Interrogatory No. 4, plaintiff stated, "The March 1, 2011 event was a windstorm that caused severe and continuing damage to the subject property. This is the only occurrence that Plaintiff is basing its suit upon. There logically were instances of rain, snow, and other weather-related events that occurred after the March 1, 2011 wind event, but, those are not specific occurrences giving rise to any independent claims in this matter. Those additional incidences simply caused continued damage

-5-

that resulted from the initial event of March 1, 2011. Plaintiff cannot testify as to a specific date on which such other events occurred, but that they were after March 1, 2011." As to the damages, plaintiff answered, "Plaintiff is claiming the following amounts for the windstorm event of March 1, 2011. The specific line by line entries and totals are contained within the United Construction Consultants, LLC report which is in the possession of Defendants." Plaintiff then listed items totally $2,877,300.21.

Plaintiff's supplemental answer to the damages interrogatory was confusing to defendant, in the face of the previously-produced Stephenson Report, which had set repair costs at about $4.2 million. Defendant's counsel contacted plaintiff's counsel and noted that plaintiff had never produced a report by United Construction Consultants, LLC. On September 4, 2014, plaintiff served supplemental (and unverified) answers to defendant's interrogatories. This time, plaintiff itemized $5,430,070.66 worth of damages.

On September 16, 2014, defendant filed a fifth motion to compel, in which motion defendant complained about several issues. First, defendant complained that plaintiff had not complied with Magistrate Judge Finnegan's August 12, 2014 order. Second, defendant complained that plaintiff had not yet produced its 30(b)(6) witness for deposition. Finally, defendant complained that certain damages documents were produced too late to be useful at a deposition. Specifically, defendant explained that it had deposed three witnesses (including Robert Stephenson) from the Stephenson Group. At the beginning of Robert Stephenson's deposition, he presented defendant's counsel with a zip file and represented that the zip file contained only documents that had previously been produced. When defendant's counsel looked at the file after the deposition, defense counsel discovered yet another damages itemization, this

one totaling $2,706,938. Defendant requested that the court compel production of certain documents and answers, that the court allow certain witnesses to be redeposed and that the court sanction plaintiff.

Magistrate Judge Finnegan set a briefing schedule on the fifth motion to compel. While that motion was being briefed, plaintiff produced its 30(b)(6) deponent, Deacon Romeo. Defendant's 30(b)(6) notice of deposition indicated that the deponent would be asked to testify about the precise location(s) where [the church] sustained wind or hail damage to its roof or walls which allowed rain or snow to enter the interior of the structure." At the deposition, however, Deacon Romeo was not able to provide details about damage to the fellowship hall or to the education building. Instead, he testified that his only knowledge about damage to those structures came from the Stephenson Group Report, which he had not read. Nor was Deacon Romeo able to explain why the damages calculations had varied so much. He did not know if any of the reports separated out pre-existing damage from damage allegedly caused by the March 1, 2011 windstorm. Finally, when asked about United Construction Consultants, LLC, Deacon Romeo stated that it was a company hired by plaintiff's counsel to provide a report. Deacon Romeo added that United Construction Consultants, LLC was essentially the same as the Stephenson Group, because the same people worked for both.

Magistrate Judge Finnegan issued a Report and Recommendation on January 7, 2015. Magistrate Judge Finnegan concluded that plaintiff had failed to comply with her August 12, 2014 order, and she described plaintiff's damages claim as "incomprehensible." Magistrate Judge Finnegan recommended that this Court order the following:

(a) that defendant be awarded its attorneys' fees and costs in connection with the third, fourth and fifth motions to compel (R and R at 27);

(b) that plaintiff be ordered to pay the court reporter fees at the re-depositions of Deacons Sawyer, Romeo and King (R and R at 27);

(c) that plaintiff be barred from offering at trial or in any hearing any evidence of damages or causation that plaintiff had not produced by January 7, 2015 (R and R at 27-28);

(d) that plaintiff be barred from seeking compensation for damages to the fellowship hall and education building (R and R at 28);

(e) that plaintiff again produce a 30(b)(6) deponent on the subject of damages and that plaintiff pay for the court reporter for the deposition (R and R at 28);

(f) that plaintiff pay for one hour of defendant's attorney time to compensate defendant for the time wasted at Deacon Romeo's 30(b)(6) deposition (R and R at 28);

(g) that plaintiff make available a knowledgeable member of the Stephenson Group to testify about the damages estimate of $2,706,938 on the zip file and that plaintiff pay for the court reporter for the deposition (R and R at 29).

In addition, Magistrate Judge Finnegan ordered plaintiff to produce a copy of the report drafted by United Construction Consultants, LLC "even if [plaintiff] no longer is relying on these damages figures." That was an order, not a recommendation for this Court.

Plaintiff timely filed objections, and defendant responded.

## II. Standard of review

When a magistrate judge makes a recommendation on a dispositive issue, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed.R.Civ.P. 72(b). Where, as here, a magistrate judge issues a report and recommendation and no party objects that the matter should have been handled via non-dispositive order, the district judge "shall presume that the parties acquiesced to the magistrate judge's treatment of the matter as disposive and, therefore, shall make a *de novo* review." *United Central Bank v. Kanan Fashions, Inc.*, Case No. 10 C 331, 2011 WL 4396856 at *2 (N.D. Ill. Sept. 21, 2011). In this case, the Court will review *de novo* plaintiff's objections to Magistrate Judge Finnegan's recommendations.

On one issue, Magistrate Judge Finnegan issued a non-dispositive order, rather than a recommendation. Any objection to her order will be reviewed under the clearly erroneous standard. Fed.R.Civ.P. 72(a) (when reviewing a non-dispositive order issued by a Magistrate, the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.")

## III. Discussion

Plaintiff filed objections to the Magistrate's report and recommendation. Plaintiff does not cite any caselaw or the Federal Rules of Civil Procedure, but the Court will consider its objections, nonetheless.

### *Expenses for the fourth motion to compel*

Plaintiff first objects to the Magistrate's report and recommendation by arguing that plaintiff complied with a portion of the Magistrate Judge's August 12, 2014 order. Specifically,

plaintiff argues that it complied with the portion of the order that required it to go on record with the date of the occurrence and the specific type of weather event that caused the damage. The Court takes this argument as an objection to the Magistrate's recommendation that plaintiff be ordered to pay defendant's expenses for filing the fourth motion to compel.

On August 12, 2014, Magistrate Judge Finnegan ordered plaintiff to provide "the date for each weather event, a description of each such weather event (e.g., windstorm, hail storm, tornado), and a description of the specific damages to the church resulting from each weather event and cost of repair. To the extent that Plaintiff is unable to provide this information, it must so state in the supplemental answers and will be bound by the answers at trial."

With respect to the date and description of the occurrences (i.e., in response to interrogatory no. 4), plaintiff provided a supplemental answer after Magistrate Judge Finnegan issued her August 12, 2014 order. Plaintiff's supplemental answer stated:

> The March 1, 2011 event was a windstorm that caused severe and continuing damage to the subject property. This is the only occurrence that Plaintiff is basing its suit upon. There logically were instances of rain, snow, and other weather-related events that occurred after the March 1, 2011 wind event, but, those are not specific occurrences giving rise to any independent claims in this matter. Those additional incidences simply caused continued damage that resulted from the initial event of March 1, 2011. Plaintiff cannot testify as to a specific date on which such other events occurred, but that they were after March 1, 2011.

The Court agrees with plaintiff that this answer complied with the Magistrate's August 12, 2014 order as to the dates and types of occurrences.[2] Plaintiff lists the date of the only occurrence it claims (March 1, 2011) and states the type of weather event (wind). Plaintiff goes on to admit

---

[2]Plaintiff does not argue that it complied with the portion of the order on damages. Nor is the Court suggesting that it did.

that it cannot testify as to any other dates of subsequent weather events, which is what the Magistrate ordered it to do if it could not produce evidence. This answer does not suggest abuse of discovery; it suggests a lack of evidence. A party is not subjected to discovery sanctions merely because it has no evidence to produce. A lack of evidence just means that the party is unlikely to win on the merits.

Although the Court agrees that plaintiff complied with one portion of Magistrate Judge Finnegan's August 12, 2014 order (which resulted from defendant's fourth motion to compel), it does not follow that plaintiff or its counsel should be relieved of the obligation of paying defendant's expenses in filing the fourth motion to compel. The very fact that the fourth motion to compel was granted is reason enough to award the expenses defendant incurred in filing the fourth motion to compel. Fed.R.Civ.P. 37(a)(5) ("If the motion [to compel] is granted–or if the disclosure or requested discovery is provided after the motion was filed–the court must, after giving an opportunity to be heard, require . . . the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.")

Thus, the Court overrules plaintiff's objection that it or its attorneys should not have to pay defendant's expenses for having filed the fourth motion to compel on the grounds that it complied with a portion of Magistrate Judge Finnegan's August 12, 2014 order.

### *Expenses for the third motion to compel*

Plaintiff also objects that defendant sought discovery of documents "that have no bearing upon anything of consequence in this matter," such as "deacon meeting minutes." Plaintiff adds that it "open[ed] the doors to the church, for Defendant to inspect any and all additional

-11-

documents" and that defendant's inspection "resulted in no additional information other than what has already been previously provided." (Plaintiff's Objections at 8). The Court takes this argument as an objection to the Magistrate's recommendation that plaintiff pay the expenses defendant incurred filing its third motion to compel, which was the motion that sought the production of additional meeting minutes beyond December 6, 2006.

The Court first notes that the documents defendant requested were relevant, as Magistrate Judge Keys noted in his February 28, 2014 order. A deacon had testified that the condition of the church had been discussed at meetings, so minutes from those meetings might contain evidence of the condition of the church before and/or after March 1, 2011. The condition of the church was plainly relevant to this case.

The real issue, however, is whether there is a basis under the Federal Rules for charging to plaintiff or plaintiff's counsel the expenses defendant incurred filing the third motion to compel. That motion was not granted, and the requested documents were not produced after the motion was filed. Thus, Rule 37(a)(5)(A) does not provide a basis for charging the expenses to plaintiff or plaintiff's counsel. Furthermore, because the documents were found not to exist, plaintiff's failure to produce them did not violate Judge Key's February 28, 2014 order. Thus, Rule 37(b)(2)(A) does not provide a basis for charging the expenses to plaintiff or its attorneys. The Court sustains plaintiff's objection to paying defendant's expenses for filing the third motion to compel.

***The various damages reports***

The Magistrate Judge made several recommendations with respect to plaintiff's "incomprehensible" (as she described it) claim for damages. In its objections, plaintiff discusses the confusion over its demand for damages.

First, plaintiff states that its counsel mistakenly referenced United Construction Consultants, LLC in plaintiff's supplemental answer to interrogatories. Plaintiff states that Robert Stephenson (who gave a deposition in this case) owns both the Stephenson Group and United Construction Consultants, LLC. Plaintiff states, "there is simply no other *discoverable* information or documents Plaintiff can offer." (Plaintiff's objections at 4) (emphasis added).

The Court takes this argument as an objection to the Magistrate's order that plaintiff produce its report from United Construction Consultants, LLC ("UCC"), even if it no longer intends to rely upon it. That was an order, not a recommendation, so the standard of review is clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a). Plaintiff does not argue that the Magistrate's order was clearly erroneous or contrary to law. All plaintiff says is that "no other *discoverable* information" exists. Including the second adjective in that sentence, of course, changes the meaning. Plaintiff's counsel has not said the document does not exist. He says a *discoverable* document does not exist; but, he does not make any legal argument as to why the document is not discoverable. The Magistrate had reason to think it was discoverable: Deacon Romeo testified that plaintiff's counsel had hired UCC to provide a report, and plaintiff's counsel mentioned the report in a supplemental response to an interrogatory. Plaintiff's objection is overruled. Plaintiff must either produce the document or file with the Court an affidavit signed by Scott Hunziker saying the document does not now and never did exist.

Next, plaintiff takes issue with the Magistrate's recommendation that defendant be allowed to re-depose Robert Stephenson about the "estimate draft" from the zip file he produced the morning of his deposition. Plaintiff's objection seems to be that the deposition defendant already took should suffice. The Court disagrees. The witness represented to defense counsel that the zip file contained no new information. That turned out to be false. Defendant is entitled to re-depose the witness to ask about the new information, and plaintiff's counsel (who hired the witness) can pay the court reporter fee. The objection is overruled.

### *General objection to all fines*

Plaintiff objects, generally, to requiring plaintiff to pay any amounts for discovery abuses or sanctions. Plaintiff argues that it would be unjust to require plaintiff to pay given that "Plaintiff has already suffered financial hardship due to the weather event made the basis of this suit." (Plaintiff's objections at 10).

The Court agrees that it would be unjust for plaintiff to pay but not for the reason plaintiff suggests. Instead, the Court concludes that the discovery problems were caused by plaintiff's counsel, rather than by plaintiff, so it is plaintiff's counsel, Scott Hunziker, who should bear the burden of the expenses. For example, the Magistrate Judge recommends requiring plaintiff to pay the court reporter fees when Deacons Sawyer, Romeo and King are re-deposed. The reason those witnesses will be re-deposed is that they testified that they had provided plaintiff's counsel with relevant documents, but those documents were not produced until defendant filed a motion to compel. It is plaintiff's counsel's fault that those depositions need to be retaken. Likewise, the problems with the multiple and different damages calculations

(which resulted in at least two motions to compel) are the fault of plaintiff's counsel and the company(ies) plaintiff's counsel hired.

One other expense warrants discussion. The Magistrate Judge was troubled by Deacon Romeo's lack of preparation for the 30(b)(6) deposition. She recommended that the Court award defendant the value of an hour of its attorney's time to compensate defendant for the time wasted at Deacon Romeo's 30(b)(6) deposition. She also recommended that defendant be allowed to take another 30(b)(6) deposition, at which plaintiff should pay for the court reporter. This Court disagrees. The fact that Deacon Romeo was unable to answer defendant's questions merely means plaintiff lacks evidence to support its case. It is not a waste of time to learn that one's opponent lacks evidence to support its case. If defendant wants to give its opponent another bite at the apple by taking another 30(b)(6) deposition, this Court will grant it leave, but defendant will have to pay for the court reporter itself.

### *Other recommendations*

Plaintiff has not objected to the remainder of the Magistrate Judge's recommendations, and the Court adopts them for the reasons she gave. *See also* Fed.R.Civ.P. 37(c)(1).

## IV. Conclusion

For the reasons set forth above, the Court adopts the Magistrate's *Report and Recommendation* [71] to the extent it is consistent with this opinion. The Court grants in part and denies in part defendant's fifth motion [61] to compel and demand [54] for sanctions. The Court orders as follows:

(a) Scott Hunziker is ordered to pay defendant, by March 10, 2015, $5,166.00³, its reasonable expenses for filing the fourth and fifth motions to compel;

(b) Scott Hunziker is ordered to pay the court reporter fees for the re-noticed depositions of Deacons Sawyer, Romeo and King, should defendant choose to take them;

(c) plaintiff is barred from offering at trial or in any hearing any evidence of damages or causation that defendant requested and plaintiff failed to produce on or before January 7, 2015;

(d) plaintiff is barred from seeking compensation for damages to the fellowship hall and education building;

(e) by March 10, 2015, plaintiff's counsel must either: (1) produce to defendant a copy of the report drafted by United Construction Consultants LLC; or (2) file with the Court an affidavit (signed by Scott Hunziker) that states the report does not exist and never existed; and

(f) defendant is granted leave to re-depose Robert Stephenson, and Scott Hunziker is ordered to reimburse defendant for the cost of the court reporter within 21 days after defendant provides a copy of the bill to Scott Hunziker.

ENTER:

George M. Marovich
United States District Judge

DATED: February 23, 2015

---

³Defendant submitted its billing records, and the Court has concluded that defendant reasonably spent 7.5 hours preparing its fourth motion to compel and 17.1 hours preparing its fifth motion to compel. Defendant's attorney's reasonable hourly rate is $210 per hour.